UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Lynn M. Haggerty, | |
| Plaintiff | |
| v. | COMPLAINT |
| | Jury Trial Requested |
| Oppenheimer & Co., Inc. | |
| Citizens Securities, Inc., | |
| Paul G. Conlon and | |
| Sandra M. Nagler, M.D. | |
| Defendants | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW COMES the plaintiff Lynn M. Haggerty, by and through counsel, and respectfully submits the within Complaint, stating as follows:

**I.   Parties**

1. The plaintiff Lynn M. Haggerty resides at 9 Sheridan Road, Wilmington, Massachusetts. Ms. Haggerty was employed by Sandra M. Nagler, M.D., P.C. as Dr. Nagler's Practice Coordinator beginning on or about January 1, 2018, and continuing through on or about March 26, 2020. Ms. Haggerty has standing to bring the instant action because she pleads herein "injur(ies) implicating defendants' fund management practices." Velazquez v. Massachusetts Fin. Servs. Co., 320 F.Supp.3d 252, 257 (D. Mass. 2018). Ms. Haggerty brings this action to recover losses to the Plan affecting not only herself but the other Plan participant, Dr. Nagler.

2. The defendant Oppenheimer & Co., Inc. (Oppenheimer) is a New York corporation with a principal place of business at 425 Lexington Avenue, 3rd Floor, New York, New York.

1

3.      The defendant Citizens Securities, Inc. (Citizens) is a Rhode Island corporation with a principal place of business located at One Citizens Bank Way, Johnston, Rhode Island. The Citizens Securities, Inc. office primarily involved in the acts and omissions that this action concerns is located at 770 Legacy Place, Dedham, Massachusetts.

4.      The defendant Paul G. Conlon resides at 44 Putnam Street, Quincy, Massachusetts, upon information and belief. At relevant times, Mr. Conlon was an agent, first for Oppenheimer and later for Citizens.

5.      The defendant Sandra M. Nagler, M.D. resides at 112 Clifford Street, Melrose, Massachusetts, upon information and belief.

## II.    Jurisdiction and Venue

6.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132 (e)(1). The Court may exercise supplemental jurisdiction over Ms. Haggerty's State law claims.

7.      Venue is proper because a substantial part of the acts and omissions giving rise to this action occurred within this judicial district.

## III.   Facts

8.      Ms. Haggerty became employed as Dr. Nagler's Practice Coordinator on or about January 1, 2018. The legal name of Dr. Nagler's business entity was "Sandra M. Nagler, M.D., P.C."

9.      The compensation promised to Ms. Haggerty by Dr. Nagler included a weekly salary of $2,122.40 plus the opportunity to participate in a 401(k) plan with a 4% employer match of employee contributions. The name of the Plan was the "Sandra Nagler PC 401(k) Plan."

10. Sandra M. Nagler, M.D., P.C. had only three (3) employees, including Dr. Nagler, a medical assistant and Ms. Haggerty.

11. Only Dr. Nagler and Ms. Haggerty participated in the Plan, upon information and belief.

12. To enroll in the "Sandra Nagler PC 401(k) Plan" (the Plan), Ms. Haggerty completed an "Enrollment Form For Single K Plan" for OppenheimerFunds Distributor, Inc. on or about December 14, 2017, in anticipation of her January 1, 2018, employment start date. Exhibit A. Ms. Haggerty also completed a "Salary Deduction Agreement For Single K Plan" for OppenheimerFunds Distributor, Inc. through which she elected a 4% salary deduction contribution to the Plan. Exhibit B.

13. Ms. Haggerty sent her executed Enrollment Form and Salary Deduction Agreement to Oppenheimer's agent Paul Conlon on or about December 26, 2017. Through such executed documents, Ms. Haggerty directed Oppenheimer and Mr. Conlon to invest on her behalf the monies withheld from her paychecks for 401k contributions by investing 25% of such funds in Oppenheimer's International Diversified Fund, 25% of such funds in Oppenheimer's Discovery Mid Cap Growth Fund, 25 % of such funds in Oppenheimer's Limited-Term Bond Fund and 25% of such funds in Oppenheimer's Global Allocation Fund. Exhibit A.

14. Ms. Haggerty had 4% of her compensation withheld for contribution to the Plan for all times during her employment, from on or about January 1, 2018, through on or about March 26, 2020. Correspondence that Ms. Haggerty received from Dr. Nagler's accountant, Richard J. Gianelly, indicates that $84.90 was withheld as a 401k contribution from each paycheck issued to Ms. Haggerty by Dr. Nagler's practice. Exhibit C, faxes from Richard J. Gianelly & Co. to Ms. Haggerty dated 2/18/2020 and 8/1/2019.

15.     By April 25, 2019, Ms. Haggerty had not received any account statements relative to her participation in the Plan.  She called the defendant Conlon's offices for information.  A representative informed Ms. Haggerty that she should be receiving statements, but that the representative could not locate any accounts under either Ms. Haggerty's social security number or Dr. Nagler's taxpayer identification number.

16.     On or about April 30, 2019, Ms. Haggerty asked Dr. Nagler about Ms. Haggerty's retirement funds.  Dr. Nagler stated that the funds, as well as Dr. Nagler's own retirement funds, would soon be transferred to Citizens Securities, Inc. (Citizens), where the defendant Conlon would be working.

17.     On or about July 12, 2019, the defendant Conlon met with Dr. Nagler and the plaintiff regarding opening retirement accounts with the defendant Citizens.  The defendant Conlon presented Ms. Haggerty with a business card identifying himself as a Financial Advisor and Assistant Vice President with Citizens.  Exhibit D.  Ms. Haggerty complied with the defendant Conlon's request to complete a Client Relationship Agreement with Citizens, through which Ms. Haggerty directed Citizens to invest monies withheld from her paychecks for 401k contributions in the "American Funds 2025 Target Date Retirement R-5E" fund.  Exhibit E.  The defendant Conlon assured Ms. Haggerty that all funds that she had invested to date including market gains would be transferred to her new account with Citizens.

18.     The defendant Conlon visited Dr. Nagler's offices on or about July 19, 2019, and took possession of Ms. Haggerty's executed Client Relationship Agreement (Exhibit E), as well as Dr. Nagler's executed Client Relationship Agreement.

19. On or about October 9, 2019, Ms. Haggerty called the defendant Conlon at his Citizens work number, leaving a voice mail inquiring about the status of her retirement account. The defendant Conlon responded to Ms. Haggerty that he was "working on it."

20. Ms. Haggerty spoke with the defendant Conlon on or about January 16, 2020, during which telephone call he advised her that "earnings [would be] on the way in two (2) weeks."

21. On or about February 28, 2020, Ms. Haggerty e-mailed the defendant Conlon expressing her concerns about her retirement funds, writing as follows:

Paul,

Since I have been unable to get any account information on my 401k (initially set up (o)n December 27, 2017 with Voya [then] later with Citizens on July 25, 2019), I have decided to reach out elsewhere to see upon resolving this.

It has now been 26 months with no account or documents from either Voya or Citizens regarding either account. I only have the initial paperwork I filled out to open the Voya and Citizens accounts. After contacting Voya about my account in early 2019 about my lack of statements, they told me no account existed for me. They couldn't find anything under my social security number or the business name. What a shock that was.

I have reached out to you in 2019 with multiple phone calls and you continued to tell me you were correcting it. I called you again on our last conversation on January 16, 2020 you told me the "earnings were on the way in two weeks." I left you a voicemail on your cell phone on February 25, 2020.

I have had withholding from my payroll check since January 1, 2018 and no information as to where those funds are though you have told me they are with Citizens Investment Services. I think my concerns are valid and 26 months is more than enough to have resolved this. I should never have let it reach this point but I was trusting that it would be resolved in a timely manner.

Lynn Haggerty

Exhibit F.

22.    On or about March 5, 2020, Ms. Haggerty contacted Benefits Advisor Rebecca DeChellis at the United States Department of Labor regarding her concerns about the status of her contributions to the Plan.

23.    Upon information and belief, Benefits Advisor DeChellis contacted the defendant Nagler on or about March 20, 2020.  Benefits Advisor DeChellis confirmed during this communication that the defendant Nagler was the Plan Administrator.

24.    On or about March 26, 2020, Dr. Nagler notified Ms. Haggerty that she was "furloughed," ostensibly due to COVID-19.  Ms. Haggerty never returned to active employment with Dr. Nagler's office and received notice from Dr. Nagler of her termination on or about April 30, 2020.  Exhibit G.

25.    On or about April 16, 2020, Benefits Advisor DeChellis advised Ms. Haggerty that she had communicated with the defendant Conlon, who had assured her that Ms. Haggerty's retirement funds would be in the Plan that day.  Benefits Advisor DeChellis told Ms. Haggerty that she would contact the defendant Conlon on April 20, 2020, to confirm deposit of the retirement funds in the Plan.

26.    On or about April 24, 2020, Benefits Advisor DeChellis advised Ms. Haggerty that she had been unable to confirm with the defendant Conlon the promised deposit of Ms. Haggerty's funds in the Plan.  Benefits Advisor DeChellis further advised Ms. Haggerty that Dr. Nagler had failed to respond to a United States Department of Labor document production request.

27.    On or about May 13, 2020, Benefits Advisor DeChellis advised Ms. Haggerty that the defendant Conlon was now blaming Coronavirus for the ongoing failure to deposit Ms. Haggerty's retirement funds in the Plan.

28.     On or about August 28, 2020, Benefits Advisor DeChellis reported to Ms. Haggerty that she had received incomplete documents from the defendant Conlon reflecting that the Plan had in fact never been created.

29.     On or about October 23, 2020, Benefits Advisor DeChellis reported to Ms. Haggerty that the defendant Conlon had represented that Ms. Haggerty supposedly wanted to "terminate the Plan." Ms. Haggerty assured Benefits Advisor DeChellis that this representation was false and that she had not spoken with the defendant Conlon since January 16, 2020, when he had assured her that her earnings would be "on the way in two (2) weeks." Benefits Advisor DeChellis advised Ms. Haggerty to contact her if Ms. Haggerty received payments from, or received any contact from, either the defendant Nagler or the defendant Conlon. Ms. Haggerty received no such payment or contact.

30.     On or about February 11, 2021, the United States Department of Labor e-mailed Ms. Haggerty a benefit statement it had obtained regarding Ms. Haggerty's participation in the Sandra Nagler PC 401(k) Plan—a Plan that Benefits Advisor DeChellis had informed Ms. Haggerty had never properly been created. Exhibit H. The Benefits Statement represented— without any explanation or supporting documentation—that Ms. Haggerty was fully vested in the Plan, that she had contributed $4,966.68 to the Plan, that her employer had matched her contributions in the amount of $4,414.80, that her earnings from the plan totaled $299.09, and that the funds in the Plan available to her for rollover or distribution totaled $9,680.57. Id.

31.     Benefits Advisor DeChellis further advised Ms. Haggerty on or about February 11, 2021, that the matter was being referred to the United States Department of Labor's enforcement division.

32. On or about April 16, 2021, Benefits Advisor DeChellis advised Ms. Haggerty that the USDOL enforcement division had declined to take action and that she should retain private counsel.

33. Ms. Haggerty has never obtained actual knowledge of what the defendants, or any of them, did with her contributions to the Plan or Dr. Nagler's contributions to the Plan.

## COUNT I

**(Breach of Fiduciary Duty Against Defendant Oppenheimer & Co., Inc. Pursuant to 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1132(a)(3))**

34. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

35. 29 U.S.C. §1132 (a)(2) authorizes Ms. Haggerty as a participant in the Plan to bring a civil action for appropriate relief for the Plan relative to a breach of fiduciary duty.

36. 29 U.S.C. §1132(a) (3) further authorizes Ms. Haggerty as a participant in the Plan to bring a civil action to obtain appropriate equitable relief for herself as an aggrieved individual.

37. The defendant Oppenheimer was a fiduciary with respect to the Sandra Nagler PC 401(k) Plan because Oppenheimer had control or authority over Plan assets.

38. Oppenheimer's status as a fiduciary imposed on Oppenheimer a fiduciary duty of loyalty, as well as a fiduciary duty to monitor.

39. The duty of loyalty requires a fiduciary to act for the exclusive purpose of providing benefits to participants.  29 U.S.C. §1104(a)(1)(A).

40. Oppenheimer breached its duty of loyalty, failing to provide any retirement benefits to Ms. Haggerty, breaching its commitment to invest on Ms. Haggerty's behalf in Oppenheimer funds monies withheld from Ms. Haggerty's paychecks.  Such Oppenheimer funds included an

International Diversified Fund, a Discovery Mid Cap Growth Fund, a Limited-Term Bond Fund and a Global Allocation Fund.

41. The duty of loyalty also requires a fiduciary not to mislead Plan participants.

42. The defendant Oppenheimer breached its fiduciary duty of loyalty not to mislead Plan participants, misleading Ms. Haggerty to believe that the defendant Oppenheimer would invest the 401k contributions withheld from her paycheck in the Oppenheimer funds that Ms. Haggerty designated, when in fact the defendant Oppenheimer failed to do so.

43. The defendant Oppenheimer further breached its fiduciary duty to monitor.

44. The defendant Conlon was an agent of the defendant Oppenheimer at relevant times from December 14, 2017, forward, with management duties regarding the Plan.

45. The defendant Oppenheimer breached its fiduciary duty to monitor the defendant Conlon's management activities regarding the Plan, causing the Plan losses and causing the plaintiff harm.

46. The defendant Oppenheimer's breaches of its fiduciary duties have caused losses to the Plan, requiring the defendant Oppenheimer pursuant to 29 U.S.C. §1109 to make good to the Plan the losses resulting from the defendant Oppenheimer's breaches and to restore to the Plan any profits of the defendant Oppenheimer that have been made through use of assets of the Plan by the defendant Oppenheimer.

47. The defendant Oppenheimer's breaches of its fiduciary duties further warrant the imposition of a constructive trust over the plaintiff's monies held in the defendant Oppenheimer's funds (including without limitation the International Diversified Fund, the Discovery Mid Cap Growth Fund, the Limited-Term Bond Fund and the Global Allocation Fund). The plaintiff is

entitled to restitution of her monies held in such funds of the defendant Oppenheimer. <u>Sereboff v. Mid Atl. Med. Servs.</u>, 547 U.S. 356, 362-63 (2006).

48. The plaintiff is also entitled to the remedy of surcharge to compensate her for the losses that she has suffered resulting from the defendant Oppenheimer's breaches of its fiduciary duties, including the defendant Oppenheimer's fiduciary duty of loyalty and its fiduciary duty to monitor. <u>Estate of Smith v. Raytheon Co.</u>, 573 F.Supp.3d 487, 509 (D.Mass. 2021).

49. Additionally, the plaintiff is entitled to disgorgement because the defendant Oppenheimer wrongfully obtained the monies withheld from the plaintiff's paychecks, obtaining such monies through a commitment to invest the monies on the plaintiff's behalf that the defendant Oppenheimer breached.

50. The Court should award the plaintiff her reasonable attorney's fees and costs pursuant to 29 U.S.C. §1132 (g).

## COUNT II

**(Breach of Fiduciary Duty Against Defendant Citizens Securities, Inc. Pursuant to 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1132(a)(3))**

51. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

52. 29 U.S.C. §1132 (a)(2) authorizes Ms. Haggerty as a participant in the Plan to bring a civil action for appropriate relief for the Plan relative to a breach of fiduciary duty.

53. 29 U.S.C. §1132(a) (3) further authorizes Ms. Haggerty as a participant in the Plan to bring a civil action to obtain appropriate equitable relief for herself as an aggrieved individual.

54. The defendant Citizens was a fiduciary with respect to the Sandra Nagler PC 401(k) Plan because the defendant Citizens had control or authority over Plan assets.

55. The defendant Citizens' status as a fiduciary imposed on the defendant Citizens a fiduciary duty of loyalty, as well as a fiduciary duty to monitor.

56. The duty of loyalty requires a fiduciary to act for the exclusive purpose of providing benefits to participants. 29 U.S.C. §1104(a)(1)(A).

57. The defendant Citizens breached its duty of loyalty, failing to provide any retirement benefits to Ms. Haggerty, breaching its commitment to invest on Ms. Haggerty's behalf in Citizens funds monies withheld from Ms. Haggerty's paychecks. Such Citizens funds included the American Funds 2025 Target Date Retirement R-5E.

58. The duty of loyalty also requires a fiduciary not to mislead Plan participants.

59. The defendant Citizens breached its fiduciary duty of loyalty not to mislead Plan participants, misleading Ms. Haggerty to believe that the defendant Citizens would invest on Ms. Haggerty's behalf the 401k contributions withheld from her paycheck in the Citizens funds that Ms. Haggerty designated (specifically, the American Funds 2025 Target Date Retirement R-5E) when in fact the defendant Citizens failed to do so.

60. The defendant Citizens further breached its fiduciary duty to monitor.

61. The defendant Conlon was an agent of the defendant Citizens at relevant times from July 12, 2019, forward with management duties regarding the Plan.

62. The defendant Citizens breached its fiduciary duty to monitor the defendant Conlon's management activities regarding the Plan, causing the Plan losses and causing the plaintiff harm.

63. The defendant Citizens' breaches of its fiduciary duties have caused losses to the Plan, requiring the defendant Citizens pursuant to 29 U.S.C. §1109 to make good to the Plan the

losses resulting from the defendant Citizens' breaches and to restore to the Plan any profits that the defendant Citizens has made through use of assets of the Plan.

64. The defendant Citizens' breaches of its fiduciary duties further warrant the imposition of a constructive trust over the plaintiff's monies held in the defendant Citizens' funds (including without limitation the American Funds 2025 Target Date Retirement R-5E). The plaintiff is entitled to restitution of her monies held in such funds of the defendant Citizens. Sereboff v. Mid Atl. Med. Servs., 547 U.S. 356, 362-63 (2006).

65. The plaintiff is also entitled to the remedy of surcharge to compensate her for the losses that she has suffered resulting from the defendant Citizens' breaches of its fiduciary duties, including the defendant Citizens' fiduciary duty of loyalty and its fiduciary duty to monitor. Estate of Smith v. Raytheon Co., 573 F.Supp.3d 487, 509 (D.Mass. 2021).

66. Additionally, the plaintiff is entitled to disgorgement because the defendant Citizens wrongfully obtained the monies withheld from the plaintiff's paychecks, obtaining such monies through a commitment to invest the monies on the plaintiff's behalf that the defendant Citizens breached.

67. The Court should award the plaintiff her reasonable attorney's fees and costs pursuant to 29 U.S.C. §1132 (g).

## COUNT III

**(Breach of Fiduciary Duty Against Defendant Paul Conlon Pursuant to 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1132(a)(3))**

68. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

69. 29 U.S.C. §1132 (a)(2) authorizes Ms. Haggerty as a participant in the Plan to bring a civil action for appropriate relief for the Plan relative to a breach of fiduciary duty.

70. 29 U.S.C. §1132(a) (3) further authorizes Ms. Haggerty as a participant in the Plan to bring a civil action to obtain appropriate equitable relief for herself as an aggrieved individual.

71. The defendant Conlon was a fiduciary with respect to the Sandra Nagler PC 401(k) Plan because the defendant Conlon had control or authority over Plan assets.

72. The defendant Conlon's status as a fiduciary imposed on the defendant Conlon a fiduciary duty of loyalty.

73. The duty of loyalty requires a fiduciary to act for the exclusive purpose of providing benefits to participants.  29 U.S.C. §1104(a)(1)(A).

74. The defendant Conlon breached his fiduciary duty of loyalty, failing to arrange for the investment of the plaintiff's funds in the Plan and failing to invest the plaintiff's funds for the plaintiff's benefit as he was obligated to do.

75. The duty of loyalty also requires a fiduciary not to mislead Plan participants.

76. The defendant Conlon breached his fiduciary duty of loyalty not to mislead Plan participants, misleading Ms. Haggerty to believe that the defendant Conlon would invest on Ms. Haggerty's behalf the 401k contributions withheld from her paycheck in the Citizens funds that Ms. Haggerty designated (specifically, the American Funds 2025 Target Date Retirement R-5E) when in fact the defendant Conlon failed to do so.

77. The defendant Conlon's breaches of his fiduciary duties have caused losses to the Plan, requiring the defendant Conlon pursuant to 29 U.S.C. §1109 to make good to the Plan the losses resulting from the defendant Conlon's breaches and to restore to the Plan any profits that the defendant Conlon has made through use of assets of the Plan.

78. The plaintiff is also entitled to the remedy of surcharge to compensate her for the losses that she has suffered resulting from the defendant Conlon's breaches of his fiduciary duties, including the defendant Conlon's fiduciary duty of loyalty. Estate of Smith v. Raytheon Co., 573 F.Supp.3d 487, 509 (D.Mass. 2021).

79. Additionally, the plaintiff is entitled to disgorgement because the defendant Conlon wrongfully obtained the monies withheld from the plaintiff's paychecks, obtaining such monies through a commitment to invest the monies on the plaintiff's behalf that the defendant Conlon breached.

80. The Court should award the plaintiff her reasonable attorney's fees and costs pursuant to 29 U.S.C. §1132 (g).

## COUNT IV

**(Breach of Fiduciary Duty Against Defendant Sandra M. Nagler, M.D. Pursuant to 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1132(a)(3))**

81. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

82. 29 U.S.C. §1132 (a)(2) authorizes Ms. Haggerty as a participant in the Plan to bring a civil action for appropriate relief for the Plan relative to a breach of fiduciary duty.

83. 29 U.S.C. §1132(a) (3) further authorizes Ms. Haggerty as a participant in the Plan to bring a civil action to obtain appropriate equitable relief for herself as an aggrieved individual.

84. The defendant Nagler was a fiduciary with respect to the Sandra Nagler PC 401(k) Plan because the defendant Nagler was the Plan Administrator.

85. The defendant Nagler's status as a fiduciary imposed on the defendant Nagler a fiduciary duty of loyalty.

86. As part of Dr. Nagler's fiduciary duty of loyalty, Dr. Nagler owed a fiduciary duty to monitor the activities of the ERISA fiduciaries that she appointed (including the defendants Oppenheimer, Citizens and Conlon) "in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan." Bartnett v. Abbott Laboratories. 492 F.Supp.3d 787, 797 (N.D.Ill. 2020).

87. Dr. Nagler breached her fiduciary duty to monitor, failing to monitor appropriately the activities of the defendants Oppenheimer, Citizens and Conlon (and each of them), causing the Plan and the plaintiff to suffer losses, requiring the defendant Nagler pursuant to 29 U.S.C. §1109 to make good to the Plan the losses resulting from the defendant Nagler's breaches and to restore to the Plan any profits that the defendant Nagler has made through use of assets of the Plan.

88. The plaintiff is also entitled to the remedy of surcharge to compensate her for the losses that she has suffered resulting from the defendant Nagler's breaches of her fiduciary duties, including the defendant Nagler's fiduciary duty to monitor. Estate of Smith v. Raytheon Co., 573 F.Supp.3d 487, 509 (D.Mass. 2021).

89. Additionally, the plaintiff is entitled to disgorgement because the defendant Nagler wrongfully obtained the monies withheld from the plaintiff's paychecks, obtaining such monies through a commitment to invest the monies on the plaintiff's behalf that the defendant Nagler breached.

90. The Court should award the plaintiff her reasonable attorney's fees and costs pursuant to 29 U.S.C. §1132 (g).

## COUNT V

**(Intentional Misrepresentation Against All Defendants)**

91. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

92. The defendants, and each of them, made false representations of material fact to the plaintiff, promising to invest the plaintiff's monies in the Plan for her exclusive benefit.

93. The defendant Nagler further falsely represented to the plaintiff that her professional corporation would make a 4% "employer match" to the Plan for the plaintiff's benefit.

94. The defendant made these material misrepresentations to the plaintiff to induce her to rely on them to authorize withdrawals from her paychecks.

95. The defendants and each of them knew that the representations were false – that no Plan ever existed and hence no contributions were made to it on the plaintiff's behalf.

96. The plaintiff reasonably relied on the defendants' intentional misrepresentations, authorizing withdrawals from her paychecks.

97. As a direct and proximate result of the defendants' intentional misrepresentations, the plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost investment income, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

## COUNT VI

**(Negligent Misrepresentation Against All Defendants)**

98. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

99. Each defendant, in the course of such defendant's business, supplied false information for the guidance of Ms. Haggerty in her business transactions, causing and resulting in pecuniary loss to Ms. Haggerty by her justifiable reliance upon such false information.

100. Specifically, each defendant falsely promised to invest the plaintiff's monies in the Plan for her exclusive benefit.

101. The defendant Nagler further falsely represented to the plaintiff that her professional corporation would make a 4% "employer match" to the Plan for the plaintiff's benefit.

102. The defendants supplied the plaintiff such false information to guide her in her decision to authorize withdrawals from her paychecks for the purported purpose of making contributions to the Plan, on the plaintiff's behalf.

103. The plaintiff authorized withdrawals from her paychecks in justifiable reliance on the defendants' misrepresentations that the monies withdrawn would be contributed to the Plan on her behalf.

104. The defendants failed to exercise reasonable care in their representations to the plaintiff, given that the Plan was never created and no contributions to it were made.

105. As a direct and proximate result of the defendants' negligent misrepresentations, the plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost investment income, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

WHEREFORE, the plaintiff respectfully prays this Honorable Court:

A. Schedule a bench trial for Counts I-IV;

B. Schedule a jury trial for Counts V and VI;

C. Find that the defendants Oppenheimer & Co., Inc., Citizens Securities, Inc., Paul G. Conlon and Sandra M. Nagler, M.D. breached their fiduciary duties;

D. Order the defendants to make good to the "Sandra Nagler PC 401 (k) Plan" the losses resulting from the defendants' breaches of their fiduciary duties;

  E. Order the defendants to restore to the Plan any profits of the defendants that have been made through use of assets of the Plan by the defendants and/or any of them;

  F. Impose a constructive trust over the plaintiff's monies held in the defendant Oppenheimer's funds (including without limitation the International Diversified Fund, the Discovery Mid Cap Growth Fund, the Limited-Term Bond Fund and the Global Allocation Fund) and order restitution of such funds to the plaintiff;

  G. Impose a constructive trust over the plaintiff's monies held in the defendant Citizens' funds (including without limitation the American Funds 2025 Target Date Retirement R-5E) and order restitution of such funds to the plaintiff;

  H. Grant the plaintiff surcharge;

  I. Grant the plaintiff disgorgement;

  J. Award the plaintiff her reasonable attorney's fees and costs;

  K. Award the plaintiff damages in her intentional and negligent misrepresentation claims for lost wages, lost investment income, and lost employment benefits;

  L. Award the plaintiff damages in her intentional and negligent misrepresentation claims for emotional distress, humiliation, inconvenience and loss of enjoyment of life; and

  M. Grant such other and further relief as is just and equitable.

Respectfully submitted,<br>
LYNN M. HAGGERTY<br>
By her attorneys,<br>
LAW OFFICE OF LANA SULLIVAN

Date: February 10, 2023   By: /s/ Lana Sullivan
                Lana Sullivan, MA BBO#649364
                75 Second Avenue, Suite 605
                Needham, MA 02494
                (617) 454-1015
                lana@lanasullivanlaw.com

|  |  |  |
|---|---|---|
|  |  | DOUGLAS, LEONARD & GARVEY, P.C. |
| Date: February 10, 2023 | By: | /s/ Benjamin T. King<br>Benjamin T. King, NH Bar #12888<br>(*pro hac vice* app. forthcoming)<br>14 South Street, Unit 5<br>Concord, NH 03301<br>(603) 224-1988<br>benjamin@nhlawoffice.com |